UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DENEICE ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01071-SEB-MJD |
| | ) | |
| WAL-MART ASSOCIATES, INC.,<br>WALMART INC.,<br>WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Self-represented Plaintiff Deneice Anderson ("Ms. Anderson") brought this disability discrimination lawsuit against her former employer, Defendants Walmart Inc., Wal-Mart Associates, Inc., and Wal-Mart Stores East, LP (hereinafter, "Walmart"), pursuant to the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12112 *et seq.* Now before the Court is Walmart's Motion for Summary Judgment. Dkt. 52. For the reasons explained below, Walmart's motion is **GRANTED**.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because summary judgment requires "no *genuine* issue of *material* fact," "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original). Material facts are those that "might affect the outcome of the suit,"

and a dispute of material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

As the "put up or shut up" moment in a lawsuit, summary judgment requires parties to "show what evidence [they] ha[ve] that would convince the trier of fact" to find in their favor on any disputed elements. *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014). A movant's "facts as claimed and supported by admissible evidence . . . are admitted without controversy" unless "the non-movant specifically controverts the facts . . . with admissible evidence." S.D. Ind. L.R. 56-1(f). Proper evidentiary support often appears in the form of a "discovery response, a deposition, an affidavit," or the like. *Id.* at 56-1(e). Because summary judgment is not "a vehicle for resolving factual disputes," the district court need not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (citing *Anderson,* 477 U.S. at 249–50).

## BACKGROUND

### I. Factual Background

#### A. Ms. Anderson's Employment Position

In 2016, Ms. Anderson commenced her employment as a commercial packer at Walmart's E-Commerce Fulfillment Center in Plainfield, Indiana. Anderson Dep. 32:19–33:2, 36:1–7, dkt. 53-14; Jones Decl. ¶ 9, dkt. 53-17. In her role as a commercial packer, Ms. Anderson packed single items into boxes for customer shipments. Anderson Dep. 37:11–38:1, dkt. 53-14.

**B. Walmart's Employment Policies**

Walmart regards regular and punctual attendance as a required and essential job responsibility of its employees at the E-Commerce Fulfillment Center. Attendance Policy 1, dkt. 53-2; Jones Decl. ¶¶ 6–7, dkt. 53-17. Per Walmart's Attendance and Punctuality Policy, associates incur a single "point" for each unauthorized full-day and/or half-shift absence. Anderson Dep. 66:20–67:6, dkt. 53-14; Attendance Policy 4, dkt. 53-2. If an associate accumulates five or more points within a rolling six-month period, the associate is subject to termination. Anderson Dep. 65:15–25, dkt. 53-14; Attendance Policy 2, dkt. 53-2. During her deposition, Ms. Anderson acknowledged that in-person attendance was an essential aspect of her position because Walmart relied on its packers, like Ms. Anderson, to prepare shipments and to ensure customers timely receive their orders. Anderson Dep. 70:11–71:14, dkt. 53-14.

Walmart also provides a means by which employees may request an accommodation for their disabilities that promises to enable them to perform the essential functions of their jobs. Dkt. 53-1 at 1.[1] Walmart utilizes Sedgwick Claims Management Services ("Sedgwick"), a third-party claims administrator, to process accommodation and leave requests. Webb Decl. ¶ 4, dkt. 53-16. When Walmart employees request an intermittent leave of absence, Walmart's Attendance Policy advises that "reported absences will remain in a conditional status until a final determination has been made," and, "[i]f the intermittent absence [request] is denied," that employee may "be held accountable for [any] unauthorized absences." Dkt. 53-2 at 5.

[1] The exhibit submitted and relied upon by Walmart as reflecting its accommodations policy reveals that it was "effective March 28, 2022," which post-dates Ms. Anderson's employment tenure. Dkt. 53-1. This discrepancy notwithstanding, Ms. Anderson reviewed this exhibit during her deposition and agreed that she was familiar with its contents. Anderson Dep. 61:16–63:7, dkt. 53-14.

**C. Ms. Anderson's COVID-related Leave & the Unemployment Benefits Dispute**

In November 2020, Ms. Anderson requested and obtained an extended leave of absence from Walmart (through Sedgwick) in order to manage childcare needs brought on by the COVID-19 pandemic and the closure of her daughter's school. Dkt. 53-11 at 1. In May 2021, Walmart (allegedly) instructed Ms. Anderson that she needed to return to work or risk termination. Anderson Dep. 124:17–125:22, dkt. 53-14.

During her six-month leave, Ms. Anderson evidently received unemployment benefits. Walmart, however, contested the legitimacy of Ms. Anderson's entitlement to such benefits on the grounds that it had not authorized her extended absence. *Id.* at 108:16–109:11. In proceedings before the Indiana Department of Workplace Development (the "DWD"), Walmart alleged that Ms. Anderson fraudulently obtained unemployment benefits and, as such, was required to repay the monies she had received. *Id.* at 132:5–16. In early December 2021, the DWD overruled Walmart's objection, meaning that Ms. Anderson was not required to repay the benefits she had received. *Id.* at 129:6–15.

**D. Ms. Anderson Returns to Work**

In June 2021, Ms. Anderson returned to single packing on the "S2" schedule, which was Monday through Thursday. Anderson Dep. 38:2–39:4, 44:13–45:5, dkt. 53-14. Ms. Anderson also occasionally, albeit unofficially, worked the "S4" schedule from Friday through Sunday, as Walmart apparently permitted associates to work extra shifts on an ad hoc basis. Anderson Dep. 42:2–43:9, 47:7–20, 127:15–21, dkt. 53-14.

Within a week of her return, Ms. Anderson began receiving points from Operations Manager Jasmine ("Manger Jasmine") for low productivity, which assessments Ms. Anderson disputed. *Id.* at 44:23–45:6, 125:24–127:21. Indeed, on November 22, 2021, Ms. Anderson contested the

low productivity points through an "Open Door" request[2] with Walmart CEO Doug McMillon ("CEO McMillon"). *Id.* at 146:24–147:8; Dkt. 53-10. In her Open Door statement, Ms. Anderson alleged that management was targeting her in retaliation for a prior Open Door "addressing HR harassment due to a Sedgwick leave." Dkt. 53-10 at 1. Ms. Anderson also averred that she received low productivity points in contravention of company policy and that "this ongoing issue" was detrimental to her "chronic ongoing health conditions." *Id.*

**E. Ms. Anderson's Request for an Intermittent Leave of Absence**

On November 8, 2021, Ms. Anderson submitted a request through Sedgwick for an intermittent leave of absence relating to her hypertension and anxiety. *Id.* at 65:9–11, 79:12–82:18; Dkt. 53-4 at 1. On November 15, 2021, Ms. Anderson's doctor completed a medical questionnaire indicating that Ms. Anderson's hypertension and generalized anxiety disorder can cause episodes of acute symptoms, including dyspnea, chest pain, and headaches. Dkt. 53-4 at 1. In estimating the amount of time that Ms. Anderson might need to miss work due to illness, Ms. Anderson's provider answered as follows:

Frequency: _____ episode(s) per __4__ week(s) *or* __12__ month(s)
Lasting: __1__ day(s) *or* _____ hour(s) *or* _____ minutes(s) per episode

*Id.* at 2.

As her intermittent leave request pended, Ms. Anderson continued to report her absences through Sedgwick. Dkt. 53-5 at 16–18. On December 14, 2021, Sedgwick phoned Ms. Anderson and informed her that her request for intermittent leave had been approved for one illness-related absence per month. Anderson Dep. 99:24–100:1, dkt. 53-14. Ms. Anderson promptly sought

[2] Walmart does not explain its so-called "Open Door" procedure, though we presume that it refers to an internal complaint procedure.

reconsideration based on her recollection that her doctor had wanted her to take time off "anytime there was a flare-up," which could be up to three or four days in any given week. *Id.* at 100:2–13, 102:11–103:7. According to Sedgwick's formal determination letter, Ms. Anderson's specific request for three to four absences per week "could not be approved because excessive absences of an unpredictable nature w[ould] not allow [Ms. Anderson] to reliably and predictably perform [her] critical job tasks." Dkt. 53-6 at 3. As Ms. Anderson's appeal remained pending, however, the one-day-per-month accommodation stayed in effect. Dkt. 53-7 at 2.

### F. Ms. Anderson's Unapproved Absences & Termination

On December 21, 2021, Sedgwick notified Ms. Anderson that she had accumulated eleven unapproved absences over the three-plus weeks from November 26, 2021, through December 20, 2021:

| Dates of absences | Duration of Absence | Reason [condition/treatment] |
|---|---|---|
| 11/26/2021 | 11 hours | Condition |
| 11/30/2021 | 7 hours | Condition |
| 12/05/2021 | 9 hours | Condition |
| 12/06/2021 | 10 hours | Condition |
| 12/10/2021 | 9 hours | Condition |
| 12/11/2021 | 9 hours | Condition |
| 12/12/2021 | 7 hours | Condition |
| 12/13/2021 | 8 hours | Condition |
| 12/18/2021 | 11 hours | Condition |
| 12/19/2021 | 11 hours | Condition |
| 12/20/2021 | 10 hours | Condition |

Dkt. 53-9 at 3. Sedgwick instructed Ms. Anderson to "partner with [her] management team or HR representative to discuss [her] next steps." *Id.* On December 21 and 22, 2021, Ms. Anderson called her employer apparently to no avail "asking for the head of HR to reach out to [her] to see what [they] could do." Anderson Dep. 111:9–25, dkt. 53-14.

On December 22, 2021, Ms. Anderson arrived at the facility in person. However, as she attempted to enter the building, she discovered that her employee badge no longer granted her access, at which time the security personnel informed Ms. Anderson that she had been terminated.

*Id.* at 112:1–113:9. Ms. Anderson's supervisor, who was on-duty at that time, met Ms. Anderson at the entrance and stated that Human Resources Manager Keanna Jones ("Ms. Jones") would follow up with her the next day. *Id.*[3] In light of the abrupt nature of Ms. Anderson's termination, the supervisor allowed Ms. Anderson to enter the facility in order to work a shift. *Id.* at 116:3–117:2. But because Ms. Anderson's "blood pressure was through the ceiling, stroke level," she spent the next two hours in the nurse's office before the nurse advised her to return home for the day. *Id.* at 117:3–119:4. According to Ms. Anderson, "Carrie" from Human Resources[4] stated that Ms. Anderson "need[ed] to go home and deal with [her] disability." Anderson Cont'd Dep. 29:3–4, dkt. 53-15.

The following day, on December 23, 2021, Ms. Anderson received a phone call from "Carrie" who informed Ms. Anderson that she no longer needed to visit the facility to speak with Ms. Jones because Walmart had decided to terminate Ms. Anderson effective immediately. Anderson Dep. 119:11–120:6, dkt. 53-14. Ms. Anderson also recalled "Carrie" stating, "Your Sedgwick came back for one day, it doesn't cover your days, so we're going to have to terminate you, and now you can deal with your disability." Anderson Cont'd Dep. 29:6–14, dkt. 53-15.

Approximately two weeks later, on January 4, 2022, Sedgwick resolved Ms. Anderson's request for reconsideration of her prior accommodations request: Sedgwick's new determination

[3] During her deposition, Ms. Anderson could not recall the identity of her supervisor beyond the fact that he was a man. Anderson Dep. 114:7–116:3, dkt. 53-14.

[4] Walmart contends that "there was no Human Resources associate named Carrie." Dkt. 54 at 5 n.1. However, Ms. Anderson repeatedly references Carrie throughout her deposition testimony, and Walmart has identified no other (potential) human resources associate with whom Ms. Anderson spoke nor otherwise adduced evidence conclusively disproving Ms. Anderson's sworn testimony about her reported conversations with "Carrie."

approved Ms. Anderson for one absence every three months, rather than every month as was approved previously. Dkt. 53-12 at 3.[5]

## II. Procedural History

On September 14, 2022, nearly nine months after her termination, Ms. Anderson filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging that she was discriminated against in violation of the ADA. Dkt. 53-11. Ms. Anderson received notice of her right to sue on March 27, 2023, and she timely filed suit on June 20, 2023. Dkt. 1.

On June 6, 2024, we granted Walmart's motion to dismiss the Complaint in the following respects: Claims that accrued prior to November 18, 2021, were dismissed with prejudice as time-barred; and Ms. Anderson's remaining discrimination claims were dismissed without prejudice for failure to state a claim. Dkt. 32. Ms. Anderson was, however, granted leave to file an amended complaint.

Ms. Anderson's now operative pleading, filed on October 25, 2024, alleges that she was terminated because of her disability and in retaliation for reaching out to CEO McMillon about the allegedly unfair treatment she received. Sec. Am. Compl. 5, dkt. 40. Ms. Anderson also avers that Walmart Human Resources denied her accommodation request for intermittent leave as advised by her doctor. *Id.*

On November 6, 2024, Walmart filed a second motion to dismiss this action in its entirety, pursuant to 28 U.S.C. § 1915(e)(2)(A), based on alleged misrepresentations that Ms. Anderson

[5] Ms. Anderson characterizes Sedgwick's January 2022 disposition as "approv[ing]" her appeal. Dkt. 57 at 5. Given that Sedgwick's January 2022 decision restricted the frequency of intermittent leave available to Ms. Anderson, we are dubious that Ms. Anderson's characterization of the decision as an "approval" is a fair, reasonable, or accurate interpretation.

made about her finances in her *in forma pauperis* application. Dkt. 42. Concluding that the errors and omissions in Ms. Anderson's *in forma pauperis* petition were most likely the product of confusion or misunderstanding, rather than a deliberate lie, we denied Walmart's (second) motion to dismiss on April 23, 2025. Dkt. 48.

On October 3, 2025, Walmart moved for summary judgment on all claims asserted against it. Dkt. 52. Ms. Anderson filed a response in opposition on October 29, 2025, dkt. 56, and Walmart filed its reply brief on December 2, 2025, dkt. 63. Three days later, on December 5, 2025, Ms. Anderson moved for leave to file a surreply brief. Dkt. 65. Walmart filed a response on December 19, 2025, dkt. 66, and Ms. Anderson filed no reply, and the time for doing so has long since passed. Walmart's Motion for Summary Judgment, dkt. 52, and Ms. Anderson's Motion for Leave to File a Surreply, dkt. 65, are thus ripe for rulings.

## DISCUSSION

### I. Ms. Anderson's Motion for Leave to File a Surreply [Dkt. 65]

Walmart's December 2, 2025, reply brief designated four new exhibits, including, *inter alia*, Ms. Anderson's punch details from September through December 2021, and Ms. Jones's supplemental affidavit. *See generally* dkt. 62. On December 5, 2025, Ms. Anderson moved for leave to file a surreply brief in order to address "new facts and [alleged] misstatements" made by Walmart. Dkt. 65 at 2. A proposed surreply was embedded within Ms. Anderson's motion. *Id.* at 2–4. Walmart timely responded, stating that it does not oppose Ms. Anderson's request to file a surreply but noting that it had been unable to locate the case that Ms. Anderson cited in support of her motion as *Quintero v. Mercedes-Benz USA, LLC*, 2015 WL 1326416 (E.D. Cal. 2015). According to Walmart, the Westlaw database returned no exact matches for this purported decision, though

Walmart's counsel did find a case bearing a similar caption: *Quinteros v. Mercedes-Benz USA, LLC, et al.*, No. 20STCV31363 (Cal. Super. Ct. filed on Aug. 18, 2020).

Our Local Rules provide, in relevant part, as follows:

> A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections.

S.D. Ind. L.R. 56-1(d).

Given that Walmart indisputably did introduce new evidence in its reply brief, we conclude that Ms. Anderson is entitled under our Local Rules to file a surreply brief addressing those issues. Accordingly, Ms. Anderson's Motion for Leave to File a Surreply shall be **granted**. Dkt. 65. Ms. Anderson's tendered surreply brief, which was filed as a single PDF with her motion, shall therefore be **deemed filed** as of the date of its submission on December 5, 2025.

Although a straightforward reading of Local Rule 56-1(d) supports Ms. Anderson's filing of a surreply brief, we note that we also have been unable to locate the *Quintero* decision, suggesting a likelihood that the case does not exist and that Ms. Anderson fabricated the citation. Federal Rule of Civil Procedure 11(b) provides, in pertinent part, that, "[b]y presenting to the court a . . . written motion. . . , an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the claims, defenses, and other legal contentions are warranted by existing law . . . ." Fed. R. Civ. P. 11(b)(2). Misstatements of the law, including fictitious citations, "can lead to sanctions under Rule 11(c) of the Federal Rules of Civil Procedure." *Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO*, 348 F.3d 671, 677 n.4 (7th Cir. 2003). Ms. Anderson is **forewarned** that future misrepresentations to the court may warrant the imposition of sanctions against her.

## II. Walmart's Motion for Summary Judgment

Before turning to the merits of Ms. Anderson's ADA claims, we note that her response brief in opposition to Walmart's summary judgment motion raises, for the first time, several new claims of retaliation under the Family and Medical Leav Act ("FMLA"), discrimination and hostile work environment under Title VII, and constructive discharge "under federal law." Dkt. 57 at 5–6. Where, as here, a plaintiff has attempted to inject new claims into the litigation through her summary judgment brief, the Seventh Circuit has held that the "district court retains discretion to treat [such] claims . . . as a constructive motion to amend." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023). Although consideration of such constructive motions to amend is "rarely . . . appropriate," the Seventh Circuit has nevertheless advised district courts to "apply the familiar standards governing when leave to amend should be granted, paying particular attention to the potential prejudice to other parties." *Id.*

Here, we regard Ms. Anderson's late breaking introduction of new legal claims as an improper attempt to constructively amend the pleadings. As set forth in Walmart's reply brief, Ms. Anderson has throughout the course of this litigation consistently asserted claims relating to disability discrimination. *See generally* Compl. 2, 5, dkt. 1; Am. Compl. 10, dkt. 33; Sec. Am. Compl. 2, 5, dkt. 40. Ms. Anderson's charge of discrimination with the EEOC similarly referenced violations of the ADA only. Dkt. 53-11. The deadline to amend the pleadings expired on February 12, 2024, dkt. 21 at 2–3, and Ms. Anderson has failed to show good cause allowing her to constructively amend her complaint at this late juncture. *See* Fed. R. Civ. P. 6(b)(1)(B). Further supporting our conclusion is the prejudice to Walmart that Ms. Anderson's belated amendment would generate: Discovery has long since closed, and allowing Ms. Anderson to proceed on her new claims would require Walmart to expend additional time and resources conducting discovery in defending

against the merits of Ms. Anderson's allegations. Under these circumstances, we have little trouble concluding that consideration of Ms. Anderson's new claims is not warranted. Accordingly, we shall forego any effort to evaluate the potential merits of her FMLA, ADEA, and Title VII claims.

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The law also requires that the plaintiff bears the burden of proof on the issue of whether [s]he is a 'qualified individual' under the ADA." *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001). In this case, Ms. Anderson has alleged that, beginning in November 2021, Walmart discriminated against her by terminating her employment, failing to accommodate her disability, imposing unequal terms and conditions on her employment, and retaliating against her, all in violation of the ADA. Sec. Am. Compl. 2, 4–5, dkt. 40. In moving for summary judgment, Walmart construes Ms. Anderson's allegations as asserting claims for disparate treatment, failure to accommodate, and retaliation. We assess the merits of these various theories below.

### A. Qualified Individual

Ms. Anderson asserts against Walmart a disparate treatment claim as well as a failure-to-accommodate claim. A claim for disparate treatment based on disability under the ADA requires proof that (1) the plaintiff was disabled; (2) the plaintiff was qualified to perform essential functions with or without reasonable accommodation; and (3) the disability was the "but for" cause of the adverse employment action. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). A failure-to-accommodate claim similarly requires proof that the plaintiff was a qualified individual with a

disability as well as evidence that the defendant was aware of the disability and failed to reasonably accommodate the disability. *Id.*

Here, Walmart does not challenge the fact that Ms. Anderson's hypertension and anxiety are "disabilities" under the ADA, though it contends that Ms. Anderson is not a "qualified individual" within the meaning of the ADA, which, if true, is fatal to her disparate treatment and failure to accommodate theories. "A plaintiff may only recover under the ADA if she is a 'qualified individual,' in other words, someone who, 'with or without reasonable accommodation, can perform the essential functions of the job.' " *Arroyo v. Volvo Grp. N. Am., LLC*, 93 F.4th 1066, 1069 (7th Cir.), *cert. denied,* 145 S. Ct. 567 (2024). "While regular attendance is not an essential function of every job, an employer may treat regular attendance as an essential job requirement and need not accommodate unreliable attendance." *Id.* (citation modified). Indeed, as the Seventh Circuit has previously explained,

> Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job. This is especially true in factory positions, . . . where the work must be done on the employer's premises; maintenance and production functions cannot be performed if the employee is not at work.

*Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899–900 (7th Cir. 2000).

In the case before us, the record evidence supports the conclusion that Walmart "undoubtedly viewed regular and timely attendance as an essential job function." *Arroyo*, 93 F.4th at 1069. As set forth in Walmart's Attendance and Punctuality Policy, "[r]egular and punctual attendance is a required and essential function of each associate's job." Attendance Policy 1, dkt. 53-2. As Ms. Anderson herself acknowledged during her deposition, regular, in-person attendance was an important aspect of her position. Anderson Dep. 70:11–71:20, dkt. 53-14. Further evincing the importance of regular attendance is the fact that Walmart employees incur "points" for unauthorized

absences and that the accumulation of five or more points within a six-month period places employees at risk of termination. Attendance Policy 2, dkt. 53-2. Between December 17, 2021, and January 15, 2022, Walmart terminated thirty-two commercial packers at the E-Commerce Fulfillment Center due to their excessive absences and tardies, none of whom had sought an accommodation through Sedgwick and/or submitted Open Door requests. Jones Decl. ¶ 8, dkt. 53-17.

Ms. Anderson's eleven unauthorized absences, which she accumulated during the weeks leading up to her termination, demonstrate that she was unable to perform an essential aspect of her job as a commercial packer; to wit, regular and timely attendance. Dkt. 53-9 at 3. It is well-established that "the ADA does not protect persons who have erratic or unexplained absences from work." *Stragapede v. City of Evanston, Ill.*, 865 F.3d 861, 866 (7th Cir. 2017) (citing *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001)). Ms. Anderson indisputably incurred a sufficient number of points under Walmart's policy to warrant her termination, which demonstrates that she "did not perform an essential job function, barring her status as a qualified individual under the ADA." *Arroyo*, 93 F.4th at 1069.

Ms. Anderson's assertions to the contrary are unpersuasive. First, she contends that she "voluntarily reported to work" on days for which she was not scheduled, completed entire shifts "without complaint," and "achieved a top performance ranking," all of which reflect her dedication and work ethic. Dkt. 57 at 2, 4. Aside from Ms. Anderson's failure to support these factual assertions with citations to the evidentiary record, *see* S.D. Ind. L.R. 56-1(e), which failure is, in and of itself, fatal to her claims, the (otherwise) unrefuted record establishes that Walmart took issue with her *attendance* derelictions—not her productivity. *Anderson v. Street*, 104 F.4th 646 (7th Cir. 2024) (stating that "generalized and unsupported allegations cannot create a genuine dispute"). To that end, her alleged "satisfactory job performance is irrelevant." *Arroyo*, 93 F.4th at 1069.

Because Ms. Anderson has failed to satisfy her burden to establish that she is a "qualified individual" under the ADA, Walmart is entitled to summary judgment on Ms. Anderson's disparate treatment and failure to accommodate claims.

**B. Retaliation**

In the Second Amended Complaint, Ms. Anderson avers that "[r]etaliation was taken towards [her] for reaching out to" CEO McMillon via her November 22, 2021, Open Door request. Sec. Am. Compl. 5, dkt. 40. Walmart argues that Ms. Anderson's retaliation claim fails because she failed to administratively exhaust it and because no reasonable jury could find that Walmart retaliated against Ms. Anderson when it terminated her for excessive absences. Because Walmart's first argument is dispositive, we start and end our analysis with Ms. Anderson's failure to exhaust her administrative remedies.

"An ADA plaintiff must file a charge with the EEOC before bringing a court action against an employer." *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (citation modified). "A plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Id.* (citation modified). "To be 'like or reasonably related,' the claims must, at minimum, describe the same conduct and implicate the same individuals." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (internal citation omitted). Whether a claim can be expected to grow out of the EEOC's investigation of the charge "requires speculation as to what the EEOC might or might not discover in the course of an investigation." *McHale v. McDonough*, 41 F.4th 866, 870 (7th Cir. 2022).

In this case, Ms. Anderson's September 14, 2022, charge of discrimination did not allege retaliation either in form or substance. Dkt. 53-11. Ms. Anderson's charge averred, in relevant part, that she was terminated on December 23, 2021, "after taking 7 days of medical leave." *Id.* at 2. Continuing, Ms. Anderson alleged, "I believe I have been discriminated against in violation" of the ADA. *Id.* "Normally, retaliation and discrimination charges are not considered 'like or reasonably related' to one another." *Swearnigen-El*, 602 F.3d at 864–65. Thus, we do not regard Ms. Anderson's unequivocal allegation of disability discrimination as sufficient to encompass a retaliation claim. Ms. Anderson, for her part, has offered no responsive argument, factual or legal, to the contrary. Because Ms. Anderson's charge of discrimination did not include allegations of retaliation relating to her November 22, 2021, Open Door request, we hold that Ms. Anderson failed to properly exhaust her administrative remedies, which precludes her from pursuing her retaliation claim in this litigation. Walmart's motion for summary judgment shall be granted accordingly.

## CONCLUSION

For the reasons discussed above, Ms. Anderson's Motion for Leave to File a Surreply is hereby **GRANTED**. Dkt. 65. Walmart's Motion for Summary Judgment is hereby **GRANTED**. Dkt. 52.

Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: 9/28/2026

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DENEICE ANDERSON
7629 Soper Circle
Indianapolis, IN 46214

Caitlin S. Schroeder
Ogletree Deakins
caitlin.schroeder@ogletree.com

Susan M. Zoeller
Ogletree Deakins
susan.zoeller@ogletree.com